**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES INC., and MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF CHICAGO,** | **Case No. 07 C 5369** |
| Plaintiffs, | Hon. Harry D. Leinenweber |
| v. | |
| **TONY SEKULOVSKI,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' Motions for Summary Judgment. Defendant Tony Sekulovski (hereinafter, "Sekulovski") moved for summary judgment on Counts VII and VIII of the Second Amended Complaint. Plaintiff Marcus & Millichap Real Estate Investment Services Inc. (hereinafter, M&M REIS") and Defendant Sekulovski cross-moved for summary judgment on Count VIII of Defendant's Second Amended Counterclaim. For the following reasons, Plaintiff M&M REIS's Cross-Motion for Summary Judgment is granted and Defendant Sekulovski's motions are denied.

### I. BACKGROUND

M&M REIS is a real estate investment services corporation with subsidiaries in various locations throughout the United States. The subsidiaries relevant to the pending motions are Plaintiff Marcus & Millichap Real Estate Investment Services of Chicago, Inc.

("M&M Chicago"), M&M Ohio and M&M Louisville, each of which is a licensed real estate broker in the state in which it operates (Illinois, Ohio and Kentucky, respectively). Each M&M REIS subsidiary employs sales agents on an independent contractor basis.

In November 1999, Defendant Sekulovski became a sales agent with M&M Ohio, the Ohio-based subsidiary of M&M REIS, as his sponsoring broker. In February 2005, Sekulovski ended his relationship with M&M Ohio and became a sales agent with M&M Chicago as his sponsoring broker. Sekulovski remained a sales agent with M&M Chicago until he terminated that relationship on June 15, 2007. Sekulovski subsequently negotiated the terms of his separation and compensation with representatives of M&M REIS and M&M Chicago. Obviously that negotiation failed to resolve all issues between the parties because this lawsuit resulted.

The parties brought multiple claims and counterclaims but on August 26, 2008, the parties stipulated to the dismissal of those claims brought by M&M REIS. Thus, only M&M Chicago's claims and Sekulovski's counterclaims remain before the Court. The pending motions relate to M&M Chicago's claims against Sekulovski for tortious interference with contractual relations and tortious interference with prospective business relations, and Sekulovski's counterclaim against M&M REIS for breach of contract. All of these claims involve real estate deals which Sekulovski allegedly began working on before his termination but which closed afterward.

M&M Chicago's tortious interference claims relate to its failure to receive commission fees for five real estate deals: Arby's, Bradley Place, Paxton Street, Honey Creek and Alameda. There is evidence that Sekulovski began working on each of these deals before June 15, 2007, while M&M Chicago was still his sponsoring broker. For example, Sekulovski prepared and executed representation agreements for the first four deals prior to June 15, 2007. None of these representation agreements listed M&M Chicago as the seller's agent. The representation agreements for Arby's and Bradley Place listed M&M REIS as the agent and the representation agreements for Paxton Street and Honey Creek listed "The Sekulovski Group" or "The Sekulovski and Luttner Group" as agent. There also is evidence that Sekulovski began working on the Alameda deal prior to June 15, 2007, as Alameda's representative, Alan Doppelt, stated in his affidavit that Sekulovski began working on Alameda no later than April 2007. Sekulovski has collected commission fees from the seller for each of these five deals.

The Representation Agreement for the Alameda deal, which Sekulovski produced on the eve of his deposition, is a source of debate among the parties. The agreement listed NAI Horizon, Sekulovski's current sponsoring broker, as agent and was dated June 1, 2008. M&M Chicago disputes the authenticity of this document and Alan Doppelt, Alameda's representative, testified that his signature thereon is forged. Although the Alameda sale has

closed, the seller is holding the commission fee in escrow pending resolution of this lawsuit.

Although the Arby's, Bradley Place, Paxton Street, Honey Creek and Alameda deals differ factually, M&M Chicago's tortious interference claims are the same with respect to each one: Sekulovski began working on these deals while working as a sales agent for M&M Chicago so these deals belong to M&M Chicago, not Sekulovski, regardless of what the representation agreements state. Sekulovski's defense is that (1) M&M Chicago had no contract, or any expectation of entering into one, with any of the sellers for these five deals, and (2) M&M Chicago cannot show that it suffered damages by the loss of these commissions because in the normal course commissions are paid to M&M REIS, not M&M Chicago.

Sekulovski's counterclaim against M&M REIS for breach of contract relates to Stony Brook South, a retail development in Louisville, Kentucky. Stony Brook South was listed for sale with M&M Louisville, M&M REIS's subsidiary in Louisville, and was purchased by DBSI. Sekulovski worked on Stony Brook South prior to June 15, 2007, while he was working as a sales agent for M&M Chicago. During that time Sekulovski brought DBSI in as a potential buyer but the parties failed to reach agreement. Later, after Sekulovski terminated his relationship with M&M Chicago, he reintroduced DBSI as a potential buyer, the parties were able to reach an agreement, and DBSI purchased Stony Brook South.

On July 19, 2007, Sekulovski executed a written "Commission Agreement" purportedly between The Sekulovski Group of NAI Horizon and Marcus & Millichap Real Estate Investment Brokerage Company, the predecessor of M&M REIS.  In addition to Sekulovski, the document was signed by Larry Hausman, as "agent," and Aaron Johnson, as "principal broker of M&M Louisville."  The Commission Agreement states:

> This will serve as our agreement of the referral arrangement between The Sekulovski Group of NAI Horizon and Marcus & Millichap Real Estate Investment Brokerage Company:
>
> Referral Fee:  *Marcus & Millichap* will pay a $160,000 referral fee to *The Sekulovski Group of NAI Horizon* upon the close of escrow between Hurstmile, LLC (Seller) and DBSI - Discovery Real Estate Services LLC (Buyer).

Sekulovski now seeks to enforce the Commission Agreement against M&M REIS under the theory that Hausman and Johnson were M&M REIS's agents.  M&M REIS argues that Hausman and Johnson were not its agents and, even if it were a party to the Commission Agreement, that agreement lacks consideration.

Sekulovski has moved for summary judgment in his favor on M&M Chicago's tortious interference claims and his counterclaim against M&M REIS for breach of contract.  M&M REIS has cross-moved for summary judgment in its favor on Sekulovski's breach of contract counterclaim.  The Court now turns to the merits of the parties' motions.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir., 2000). In ruling on a summary judgment motion, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372 (2007). A genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 599 (7th Cir., 2000).

## III. **DISCUSSION**

### A. Counts VII and VIII of the Second Amended Complaint: Tortious Interference

M&M Chicago brings two tortious interference claims against Sekulovski: tortious interference with contractual relations and tortious interference with prospective business relations. Both of these claims relate to Sekulovski's alleged failure to direct commissions to M&M Chicago for the Arby's, Bradley Place, Paxton Street, Honey Creek and Alameda transactions.

Under Illinois law, tortious interference with contractual relations and tortious interference with prospective business relations have similar elements. A contractual relations claim requires plaintiff to show: (1) the existence of a contract between plaintiff and a third party; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach; (4) a subsequent breach; and (5) damages to plaintiff as a result. *Intercontinental Parts, Inc. v. Caterpillar, Inc.*, 631 N.E.2d 1258, 1269 (Ill.App.Ct., 1994). A plaintiff bringing a prospective business relations claim must prove: (1) a reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of that expectancy; (3) purposeful interference by the defendant that prevents the establishment of the business relationship; and (4) damages resulting to plaintiff from defendant's interference. *Fidelity Nat. Title Ins. Co. of New York v. Westhaven Properties Partnership*, 898 N.E.2d 1051, 1067 (Ill.App.Ct., 2007).

Sekulovski argues that he is entitled to summary judgment on both of these claims because M&M Chicago cannot establish that it had a contract, or any reasonable expectation of entering into one, with any of the sellers in the five deals at issue. Sekulovski also argues that M&M Chicago cannot show that it has suffered any damages as a result of not receiving commissions on those deals. Because it is possible a reasonable fact finder could find in favor

of M&M Chicago on its tortious interference claims, Sekulovski's motion for summary judgment on these claims is denied.

### *1. The existence/expectation of a contractual relationship*

Sekulovski argues that M&M Chicago was not a party to any representation agreement for the Arby's, Bradley Place, Paxton Street, Honey Creek or Alameda deals, and has provided no evidence that it reasonably expected to be, so it cannot succeed on its tortious interference claims. M&M Chicago responds that, by operation of law, it was the agent on these five deals regardless of what is stated in the written representation agreements, which Sekulovski prepared, because M&M Chicago was Sekulovski's sponsoring broker when his work on these deals commenced. As a result, according to M&M Chicago, these deals were M&M's property pursuant to Illinois law and upon Sekulovski's termination M&M Chicago would have reassigned these deals to one of its other agents.

Sekulovski terminated his affiliation with M&M Chicago on June 15, 2007. According to 225 ILCS 454/10-20(a), "a licensee may perform activities as a licensee only for his or her sponsoring broker. A licensee must have only one sponsoring broker at any one time." Thus, prior to June 15, 2007, while M&M Chicago was his sponsoring broker, Sekulovski was permitted to act as a sales agent only on its behalf. There is evidence indicating that Sekulovski began working on each of the five deals at issue prior to June 15,

2007.  He prepared and executed representation agreements for the Arby's, Bradley Place, Paxton Street and Honey Creek deals before that date.  Alameda's representative, Alan Berger, stated that Sekulovski began working on the Alameda deal no later than April 2007.  As such, Sekulovski's efforts would have been on M&M Chicago's behalf, not his own.  Given this evidence, a reasonable fact finder could find that M&M Chicago had a contractual relationship, or a reasonable expectation of entering into a contractual relationship, with the sellers in these five deals.

### 2. *Damages*

With respect to damages, Sekulovski argues that even if M&M Chicago had been listed as the agent on these five deals, it would not have received commissions for them because its business practice was to direct all of its commissions to its parent company, M&M REIS.  However, this argument assumes that the commissions actually belong to M&M Chicago because it controls their distribution.  Where M&M Chicago directs escrow agents to deposit its commissions is irrelevant. Moreover, there is evidence that the commissions M&M Chicago directs to M&M REIS, its parent, affect M&M Chicago's profit and loss statement, its managers' bonuses, and its funds available for overhead.  Given this evidence, a reasonable fact finder could find that M&M Chicago was damaged by its inability to receive the commissions on the five deals at issue.  Accordingly, Sekulovski's motion for summary

judgment on M&M Chicago's claims for tortious interference with contractual relations and tortious interference with prospective business relations is denied.

### B. Count VIII of Defendant Sekulovski's Second Amended Counterclaim: Breach of Contract

The parties have cross-moved on Count VIII of Sekulovski's Second Amended Counterclaim for breach of contract against M&M REIS. This claim relates to a commission payment Sekulovski claims is due to him in connection with the sale of Stony Point South, a retail property in Louisville, Kentucky, that was listed with M&M Louisville. According to Sekulovski, he introduced the buyer of Stony Point South to M&M Louisville and therefore M&M REIS owes him a $160,000 commission. In support of his argument Sekulovski relies on a written document entitled "Commission Agreement" which purports to be an agreement between Sekulovski and "Marcus & Millichap Real Estate Investment Brokerage Company," the predecessor of M&M REIS. The document refers to the Stony Point South deal and states, "Marcus & Millichap will pay a $160,000 referral fee to The Sekulovski Group of NAI Horizon upon the close of escrow." The document is signed by Sekulovski, Larry Hausman who is listed as "Agent," and Aaron Johnson who is listed as "Principal Broker Marcus & Millichap of Louisville."

M&M REIS argues that the Commission Agreement does not obligate it to pay any commission to Sekulovski for the Stony Point South deal since Hausman and Johnson were M&M Louisville employees

who lacked the authority to bind M&M REIS contractually. M&M REIS also claims that there is no consideration for the agreement because Sekulovski first introduced the buyer of Stony Point South, DBSI, to M&M Louisville while he was still an agent of M&M Chicago. The Court has no need to reach M&M REIS's lack of consideration argument because the lack of any signatory with the power to bind M&M REIS to the terms of the Commission Agreement warrants summary judgment in M&M REIS's favor.

In order to meet his burden of proof on the breach of contract counterclaim, Sekulovski must first prove that a contract existed. He therefore is required to establish offer, acceptance, consideration, the terms of the contract, his performance, M&M REIS's breach of the terms of the contract, and damage resulting from that breach. *Penzell v. Taylor*, 579 N.E.2d 956, 961 (Ill.App.Ct., 1991).

Sekulovski claims that Hausman and Johnson were agents of M&M REIS and had the authority to bind it contractually. Agency is a fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf. *Grillo v. Yeager Const.*, 900 N.E.2d 1249, 1263 (Ill.App.Ct., 2008). An agent's authority to bind a principal may be actual or apparent. *R.O.W. Window Co. v. Allmetal, Inc.*, 856 N.E.2d 55, 61 (Ill.App.Ct., 2006). Actual authority is derived from a specific grant of authorization to perform a particular act

or is inherent in the agent's position. *Id*. Apparent authority is that authority which a reasonably prudent person, in view of the principal's conduct, would naturally suppose the agent to possess. *Id.* Apparent authority arises where the principal creates, through words or conduct, the reasonable impression that the putative agent has been granted authority to perform certain acts. *Id.* The party alleging an agency relationship has the burden of proving it. *Valenti v. Qualex, Inc.*, 970 F.2d 363, 367 (7th Cir., 1992); citing *Matthews Roofing Co. v. Community Bank & Trust of Edgewater*, 550 N.E.2d 1189, 1193 (Ill.App.Ct., 1990).

Neither Hausman nor Johnson had actual authority to bind M&M REIS. There is no dispute that M&M Louisville, which is Hausman's and Johnson's employer, and M&M REIS are legally distinct entities. In fact, it is this distinction between M&M REIS and its local subsidiaries on which Sekulovski relies heavily in his motion for summary judgment on M&M Chicago's tortious interference claims. Furthermore, the evidence is undisputed that the only local subsidiary employees who have the authority to bind M&M REIS contractually are regional managers and neither Hausman nor Johnson was a regional manager.

To overcome this evidence with respect to Hausman, Sekulovski merely asserts, in wholly conclusory fashion, that "M&M REIS considers . . . Hausman . . . to be [an] agent[] affiliated with M&M REIS." Conclusory assertions are insufficient to establish a

or is inherent in the agent's position. *Id*. Apparent authority is that authority which a reasonably prudent person, in view of the principal's conduct, would naturally suppose the agent to possess. *Id.* Apparent authority arises where the principal creates, through words or conduct, the reasonable impression that the putative agent has been granted authority to perform certain acts. *Id.* The party alleging an agency relationship has the burden of proving it. *Valenti v. Qualex, Inc.*, 970 F.2d 363, 367 (7th Cir., 1992); citing *Matthews Roofing Co. v. Community Bank & Trust of Edgewater*, 550 N.E.2d 1189, 1193 (Ill.App.Ct., 1990).

Neither Hausman nor Johnson had actual authority to bind M&M REIS. There is no dispute that M&M Louisville, which is Hausman's and Johnson's employer, and M&M REIS are legally distinct entities. In fact, it is this distinction between M&M REIS and its local subsidiaries on which Sekulovski relies heavily in his motion for summary judgment on M&M Chicago's tortious interference claims. Furthermore, the evidence is undisputed that the only local subsidiary employees who have the authority to bind M&M REIS contractually are regional managers and neither Hausman nor Johnson was a regional manager.

To overcome this evidence with respect to Hausman, Sekulovski merely asserts, in wholly conclusory fashion, that "M&M REIS considers . . . Hausman . . . to be [an] agent[] affiliated with M&M REIS." Conclusory assertions are insufficient to establish a

legal agency, *see Valenti*, 970 F.2d at 368 (7th Cir., 1992), and Sekulovski's assertions with respect to Hausman fall far short of establishing that he had actual authority to bind M&M REIS to the Commission Agreement.

Sekulovski's allegations with respect to Johnson fare no better. In order to show that Johnson had actual authority to bind M&M REIS, Sekulovski relies on a tortured interpretation of Kentucky Revised Statute § 324.010(4). According to § 324.010(4), a principal broker is "the single broker responsible for the operation of the company with which he or she is associated." Sekulovski then argues that Johnson was the "principal broker" of M&M REIS and, since the principal broker is responsible for the operations of the company, Johnson must have had actual authority to bind M&M REIS contractually. However, as the Commission Agreement states, Johnson was the principal broker of M&M Louisville, not M&M REIS. Because M&M Louisville and M&M REIS are legally distinct entities, it simply does not follow that Johnson's responsibility for the operations of M&M Louisville gives him the authority to bind M&M REIS, its parent company, contractually.

Nor is there any evidence that Hausman or Johnson had apparent authority to bind M&M REIS. There is no evidence whatsoever that M&M REIS consented to or knowingly acquiesced in Hausman or Johnson acting as its agent with respect to the Commission Agreement. Accordingly, any conclusion by Sekulovski that they were acting as

agents of M&M REIS could not have been reasonable and any reliance thereon could not have been justifiable. Because no reasonable fact finder could conclude that Hausman or Johnson had actual or apparent authority to bind M&M REIS to the Commission Agreement, summary judgment in favor of M&M REIS on Count VIII of Sekulovski's Second Amended Counterclaim is warranted.

## IV. CONCLUSION

For the reasons stated herein, Defendant Sekulovski's Motion for Summary Judgment on Counts VII and VIII of the Second Amended Complaint and Cross-Motion for Summary Judgment on Count VIII of the Second Amended Counterclaim is DENIED. Plaintiff Marcus & Millichap Real Estate Investment Services Inc.'s Cross-Motion for Summary Judgment on Count VIII of the Second Amended Counterclaim is GRANTED.

**IT IS SO ORDERED.**

    Harry D. Leinenweber, Judge
    United States District Court

**DATE:** 6/2/2009