**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Marcus & Millichap Real Estate Investment Services Inc. and Marcus & Millichap Real Estate Investment Services of Chicago, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Tony Sekulovski, <br><br> Defendant. | Case No. 07-C-5369 <br><br> Judge Harry D. Leinenweber <br><br> Magistrate Judge Arlander Keyes |

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR NEW TRIAL**

**I. INTRODUCTION**

From October 5, 2009, through October 9, 2009, this Court conducted a jury trial in this matter. At the close of Plaintiff/Counter-Defendant Marcus & Millichap Real Estate Investment Services of Chicago, Inc.'s ("M&M Chicago") case-in-chief, Defendant/Counter-Plaintiff Tony Sekulovski ("Sekulovski") made a motion pursuant to Fed. R. 50(a) for judgment as a matter of law. Sekulovski's motion was granted in part and denied in part. M&M Chicago made a similar motion at the close of Sekulovski's case-in-chief, which was granted in part and denied in part. On October 13, 2009, the jury returned a verdict in favor of M&M Chicago on all of its remaining claims against Sekulovski. The jury also returned a verdict in favor of M&M Chicago and against Sekulovski on all of Sekulovski's counterclaims.

Sekulovski now renews his Motion for Judgment as a Matter of Law pursuant to Fed. R. 50(b) and, alternatively, requests a new trial pursuant to Fed. R. 59.

## II. ARGUMENT

### A. Sekulovski is Entitled to Judgment as a Matter of Law on M&M Chicago's Fraud Claim

M&M Chicago's fraud claim was based solely on an allegation made by one of its former agents, Mark Luttner ("Luttner"), who alleged that he and Sekulovski had devised a plan to run all commission splits through Sekulovski so that Luttner would ultimately receive more in commissions than he was otherwise entitled at the expense of M&M Chicago. Sekulovski denied the existence of any such agreement between him and Luttner.

The evidence presented to the jury at trial demonstrated that Sekulovski and Luttner agreed to split commissions in a variety of ways on several transactions and that M&M Chicago was aware of the manner in which the commissions were being split. Indeed, both Jonathan Lee, the former regional manager for M&M Chicago, and John Kerin, the corporate representative for M&M Chicago at trial, testified that they were aware of and approved the splits. M&M Chicago's sole basis for alleging fraud after the fact is Luttner's claim that Sekulovski was going to pay a portion of his commissions to Luttner. However, the evidence at trial also demonstrated that Sekulovski did not pay any portion of his commissions to Luttner and Sekulovski denied that he ever agreed to pay any commissions to Luttner.

In order to establish a claim for fraud, M&M Chicago was required to prove:

1. The statements Sekulovski made in the commission booking statements were false statements of material facts;

2. Sekulovski knew the statements were false or believed the statements to be false or made the statements in reckless disregard of whether they were true or false;

3. Sekulovski made the statements with the intent to induce M&M Chicago to pay a larger percentage of commissions than Mr. Sekulovski was entitled to;

5

4. M&M Chicago reasonably believed the statements and acted reasonably in justifiable reliance on the truth of the statements; and

5. M&M Chicago sustained damages as the result of its reliance.

*Gerill Corp. v. Jack L. Hargrove Bldrs., Inc.*, 128 Ill.2d 179, 538 N.E.2d 530 (Ill. 1989).

As the undisputed evidence demonstrated, the commission booking statements did not contain false statements. Rather, they merely reflected the manner in which the commissions on each particular transaction were to be split. The evidence at trial established that agents were permitted to split commissions as they saw fit so long as M&M Chicago approved the splits. M&M Chicago did indeed approve the commission booking statements and distributed commissions accordingly. Further, Sekulovski specifically denied making any false statements or intending to mislead M&M Chicago in any way. Therefore, M&M Chicago failed to prove all of the elements necessary to establish fraud and the Court should enter judgment as a matter of law on that claim in favor of Sekulovski.

**B.     Sekulovski is Entitled to a New Trial on M&M Chicago's Fraud Claim and Must be Permitted to Present All Evidence Regarding Mark Luttner**

In the event the Court does not grant judgment as a matter of law on M&M Chicago's fraud claim, it should order a new trial on the claim and allow Sekulovski to present all evidence concerning Luttner without redaction. At trial, Sekulovski attempted to demonstrate that Luttner was not a credible witness but, rather, was influenced by M&M Chicago. Sekulovski sought to introduce an e-mail dated March 18, 2008, in which Luttner told Sekulovski that during his deposition testimony, Luttner told M&M Chicago "what they wanted to hear." (DX 1117). However, the Court sustained M&M Chicago's hearsay objection and allowed Sekulovski to present the e-mail only after redacting the most crucial portion.

Similarly, Sekulovski sought to present a second e-mail dated October 13, 2008, in which Luttner said that M&M Chicago was paying his legal bills associated with his separate lawsuit

6

against Sekulovski and that M&M Chicago represented that it was going to drive Sekulovski to bankruptcy. (DX 118). Again, the Court ordered Sekulovski to redact these portions of the e-mail before admitting it into evidence.

Sekulovski argued at the trial that the e-mails were not being offered for the truth of the matter asserted but, rather, to show bias and Luttner's lack of credibility. The Court nevertheless sustained M&M Chicago's objections. Thus, Sekulovski's ability to show Luttner's bias and challenge his credibility was significantly limited.

Two days after the announcement of the jury's verdict, Luttner sent another e-mail to Sekulovski, stating as follows:

> Yo bitch! Word is you lost on all issues with MM. HA[.] I told you you should have left with me. [John] <u>Kerin is going back on his agreement to pay my legal bills</u> that fuck got what he wanted from me and now telling me to fuck off. He knows I cant [sic] sue them because of my separation agreement, but they can't sue me either. How about if I help you in exchage [sic] for 200,000. <u>I will tell everyone the truth and that I lied</u>. You would have to sign somting [sic] that you can't sue me though[.]

(Affidavit of Tony Sekulovski ("Sekulovski Aff.") attached as Ex. A, at Ex. 1 (emphasis added).) During the trial, Kerin was asked whether M&M Chicago had an agreement to pay Luttner's legal bills related to the litigation with Sekulovski and Kerin simply testified that he did not know. Sekulovski's counsel attempted to inquire further on the issue but was not permitted to and, without the use of the full emails, was limited by the Court as to what questions could be asked. Given the comments made in Luttner's latest e-mail, Sekulovski has concerns about Kerin's testimony regarding the existence of an agreement between Luttner and M&M Chicago which, if known to the jury, would certainly have impacted Luttner's credibility.

Sekulovski respectfully submits that the Court erred in not permitting him to introduce all evidence pertaining to Luttner's bias and credibility and should order a new trial on M&M

7

Chicago's fraud claim to allow Sekulovski to present such evidence in its entirety along with the additional e-mail from Luttner dated October 15, 2009.

### C. Sekulovski is Entitled to Judgment as a Matter of Law on M&M Chicago's Breach of Contract Claims or, Alternatively, a New Trial

During the trial, M&M Chicago argued that its breach of contract claim against Sekulovski arose from Marcus & Millichap Real Estate Investment Services, Inc.'s ("M&M REIS") Independent Contractor Policy Manual (the "Policy Manual"). However, the evidence at trial established that the Policy Manual does not constitute a binding contract between Sekulovski and M&M Chicago. Because M&M Chicago failed to prove the existence of a contract between it and Sekulovski, judgment as a matter of law should be entered in favor of Sekulovski on M&M Chicago's breach of contract claim.

M&M REIS' Policy Manual is not a contract. Indeed, the Policy Manual itself states that it is not a contract. The Policy Manual provides that "[a]ll sales agents shall execute, as appropriate, a Salesperson or Broker Independent Contractor Agreement, <u>the terms of which shall govern the relationship</u> between the agent and the Firm, and shall incorporate the terms and conditions set forth in this Independent Contractor Policy Manual." (PX 123 at p. 6 (emphasis added).) As the express language in the Policy Manual contemplates, a separate Independent Contractor Agreement is to be entered into and that agreement, not the Policy Manual, governs the relationship.

It is undisputed that Sekulovski and M&M Chicago never entered into a separate Independent Contractor Agreement that incorporated the terms and conditions of the Policy Manual. Indeed, M&M Chicago's corporate representative, John Kerin, testified that no such agreement existed. Thus, M&M Chicago's reliance on the Policy Manual as a "contract" is

flawed and the Court should enter judgment on behalf of Sekulovski on M&M Chicago's breach of contract claim. Alternatively, the Court should order a new trial on this claim.

> D. **Sekulovski is Entitled to Judgment as a Matter of Law on M&M Chicago's Tortious Interference with Contract Claim or, Alternatively, a New Trial**

During the trial, M&M Chicago sought to recover on a claim of tortious interference with contractual relations with respect to two transactions: (1) Paxton Street Commons and (2) the Shoppes of Honey Creek. In order to succeed on a claim for intentional interference with an existing contract, a plaintiff must prove all of the following:

(1) the existence of a valid and enforceable contract between the plaintiff and another;

(2) the defendant's awareness of this contractual relationship;

(3) the defendant's intentional and unjustified inducement of a breach of the contract;

(4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and,

(5) damages to the plaintiff as a result of the breach.

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 154-55, 137 Ill.Dec. 19, 23, 545 N.E.2d 672, 676 (1989). A plaintiff can only recover if there is an actual breach of the contract. *Flint v. Court Appointed Special Advocates of Du Page County, Inc.*, 285 Ill.App.3d 152, 165, 674 N.E.2d 831, 841, 221 Ill.Dec. 38, 47-48 (Ill.App. 2d Dist. 1996).

M&M Chicago failed to prove the existence of a valid and enforceable contract between it and the sellers of Paxton Street Commons and the Shoppes of Honey Creek. The only contracts that were produced at the trial were between the Sekulovski Group and the sellers of those properties. (PX 66 and 80). It was undisputed that M&M Chicago never entered into any contract with those sellers. Rather, M&M Chicago erroneously argued that because Mr. Sekulovski had "hung his license" with M&M Chicago at the time the Sekulovski Group entered

into the contracts, the contracts automatically became M&M Chicago's contracts. M&M Chicago's position is not supported by Illinois law and, regardless, these properties are situated in Pennsylvania and Indiana, respectively, and Illinois brokerage law is not applicable.

Moreover, M&M Chicago did not establish either that Sekulovski induced the sellers to breach any agreement or that there was an actual breach of a contract. M&M Chicago did not produce a single piece of evidence demonstrating that the sellers ever agreed to pay a commission to M&M Chicago. Thus, the fact that no commissions were paid to M&M Chicago does not constitute a breach. Without an actual breach, M&M Chicago cannot recover. *See*, *Flint,* 285 Ill.App.3d at 165.

Because M&M Chicago failed to prove the existence of contracts with the sellers and subsequent breaches of contracts by the sellers, Sekulovski is entitled to judgment as a matter of law on M&M Chicago's tortious interference claim. Alternatively, the Court should order a new trial on this claim with a new jury instruction that does not refer to any Illinois statute.[1]

### E. Sekulovski is Entitled to Judgment as a Matter of Law on M&M Chicago's Conversion Claim or, Alternatively, a New Trial

M&M Chicago's conversion claim involves the same 17 transactions that make up its fraud claim and the Paxton Street Commons and Shoppes of Honey Creek transactions that make up its tortious interference claim. These transactions are also part of M&M Chicago's breach of contract claim. However, because M&M Chicago did not establish a claim for conversion with respect to these transactions, the Court should enter judgment as a matter of law in favor of Sekulovski.

To prove its claim for conversion, M&M Chicago was required to establish that

---

[1] The Court erroneously gave an instruction to the jury on the tortious interference claim which included a reference to an Illinois statute regarding a licensee and a sponsoring broker. (Jury Instruction No. 12). This reference was unnecessary and misleading.

(1) it had a right to the commissions at issue;

(2) it had an absolute and unconditional right to the immediate possession of the commissions;

(3) it made a demand for possession of the commissions; and

(4) Mr. Sekulovski wrongfully and without authorization assumed control, dominion, or ownership over the commissions

*Western States Insurance Co. v. Louis E. Olivero & Associates*, 670 N.E.2d 333 (Ill. App. Ct. 1996); *Pagel v. Yates*, 471 N.E.2d 946 (Ill. App. Ct. 1984); *Weiland Tool & Mfg. Co. v. Whitney*, 241 N.E.2d 533 (Ill. App. Ct. 1968); *First Finance Co. v. Ross*, 221 N.E.2d 37, 39 (Ill. App. Ct.1966).

As discussed above, M&M Chicago did not prove that it had an absolute and unconditional right to the commissions from the 17 transactions included in its fraud claim. Rather, the evidence established that M&M Chicago paid those commissions to Sekulovski per the commission booking statements that M&M Chicago approved. Thus, he did not assume control over those commissions without authorization. The fact that M&M Chicago later adopted Luttner's version of events and sought to reclaim those commissions from Sekulovski does not create a conversion.

Similarly, with respect to the Paxton Street Commons and Shoppes of Honey Creek commissions, M&M Chicago did not prove that it had any right to those commissions. M&M Chicago did not have any agreement with the sellers of those properties to receive commissions. The fact that Sekulovski had not yet formally resigned from M&M Chicago at the time the sellers entered into the representation agreements with the Sekulovski Group does not give M&M Chicago the absolute right to commissions generated through the sale of those properties.

M&M Chicago failed to establish the elements of conversion required with respect to the 17 transactions, the Paxton Street Commons transaction, and the Shoppes of Honey Creek

transaction. Therefore, Sekulovski is entitled to judgment as a matter of law on M&M Chicago's conversion claim as it pertains to the damages sought by M&M Chicago with respect to those particular transactions.

Additionally, although Sekulovski concedes that M&M Chicago is entitled to some portion of the commissions from the Arby's and Bradley Place transactions, M&M Chicago was unable to prove a conversion with respect to those commissions. M&M Chicago sought and received a verdict for the full amount of commissions for the Arby's transaction and approximately 85% of the commissions from the Bradley Place transaction. However, M&M Chicago failed to establish that it had an absolute and unconditional right to those commissions.

M&M Chicago relied on M&M REIS' Policy Manual for its assertion that it was entitled to 100% of the Arby's commissions and 85% of the Bradley Place commissions. As explained above, the Policy Manual does not constitute a binding contract between Sekulovski and M&M Chicago and there was no evidence that Sekulovski agreed to take anything less than his fair split of the commissions for those transactions. Therefore, M&M Chicago failed to prove it had an absolute and unconditional right to the commissions it sought at trial. As a result, Sekulovski is entitled to judgment as a matter of law on M&M Chicago's conversion claim or, alternatively, a new trial on that claim.

**F.   Sekulovski is Entitled to a New Trial on all Claims Involving the 17 Transactions Related to Mark Luttner**

In addition to the reasons set forth above, Sekulovski is entitled to a new trial on all of M&M Chicago's claims for which it received an award of damages related to the 17 transactions that M&M Chicago alleged were part of a secret agreement between Sekulovski and Luttner. As Sekulovski repeatedly argued at trial, M&M Chicago's request for damages related to the 17

transactions was improper and did not take into account the amount of money M&M Chicago saved by not paying commissions to Luttner.

M&M Chicago argued that Luttner and Sekulovski improperly split commissions on the 17 transactions in a variety of ways while they should only have split the commissions on a 50/50 basis. The proper measure of damages to M&M Chicago, therefore, would be the difference between the commissions it actually received from the 17 transactions and the commissions it would have received had Luttner and Sekulovski split the commissions for the 17 transactions on a 50/50 basis. Instead, M&M Chicago asked for and received damages equal to the difference between the commissions that were actually paid to Sekulovski and what would have been paid to him had Luttner and he split the commissions on a 50/50 basis. Because M&M Chicago's damages calculation did not take into account, and Sekulovski was barred from inquiring into, the amount of those commissions that should have been paid to Luttner, M&M Chicago has received a windfall.

Indeed, as set forth in Sekulovski's Motion for Reconsideration filed on October 7, 2009 (Doc. No. 116), M&M Chicago's own expert witness testified in his deposition, and would have testified at trial, that if M&M Chicago were to receive the damages it requested from the jury, M&M Chicago would receive "significantly more" than it would have if the alleged fraud never occurred. (Louie Depo. at 74, lines 11-22). Because M&M Chicago did receive a verdict from the jury in the amount it requested, M&M Chicago has received "significantly more" than it would have had Luttner and Sekulovski split the commissions on a 50/50 basis. Sekulovski is entitled to a new trial on all claims involving these 17 transactions with proper jury instructions reflecting the true measure of damages.

### G. Sekulovski is Entitled to Judgment as a Matter of Law on his Breach of Contract Claim or, Alternatively, a New Trial

During trial, Sekulovski alleged that M&M Chicago breached its agreement with him to pay him commissions on three transactions: (1) Linens 'N Things, (2) Pizza Hut, and (3) Streamwood Crossings. M&M Chicago admitted throughout the trial that it did indeed owe Sekulovski the commissions for these three transactions. Nevertheless, the jury returned a verdict against Sekulovski on his breach of contract claim. Because the jury's verdict contradicts the undisputed evidence at trial, the Court should enter judgment as a matter of law in favor of Sekulovski on his breach of contract claim. Alternatively, the Court should order a new trial on this claim.

### H. Sekulovski is Entitled to Judgment as a Matter of Law on his Breach of Contract Claim or, Alternatively, a New Trial

Sekulovski's claim for tortious interference concerns one transaction, the Shoppes of Alameda ("Alameda"). The undisputed evidence at trial established the following:

- the seller of Alameda first approached Sekulovski about selling in April 2007;

- Sekulovski attempted to have the seller sign a representation agreement with M&M at that time;

- the seller decided not to sell the property at that time and did not enter into the representation agreement;

- in October 2007, the seller decided to move forward with selling the property and retained Sekulovski to serve as the selling agent;

- Sekulovski was no longer affiliated with M&M Chicago in October 2007;

- Alameda went into contract in June 2008 and the closing occurred in August 2008, more than a year after Sekulovski left M&M Chicago;

- on the day of closing, M&M Chicago's counsel contacted the seller of Alameda and asserted a claim on the commissions that were to be paid to Sekulovski;

- as a result of M&M Chicago's conduct, the seller directed that the commissions be held and not paid to Sekulovski;

- the seller testified that he always intended on paying the commission to Sekulovski and, but for M&M Chicago's interference, would have paid Sekulovski the full commission;

- to date, Sekulovski has not received the commissions for Alameda that he was entitled to receive per his agreement with the seller.

As the undisputed evidence at trial establishes, Sekulovski proved all of the elements necessary to succeed on his claim for tortious interference with contract related to the Alameda transaction. Therefore, the Court should enter judgment as a matter of law in Sekulovski's favor on that claim.

## III. CONCLUSION

For the foregoing reasons, Defendant/Counter-Plaintiff Tony Sekulovski respectfully requests that the Court enter judgment as a matter of law as set forth above or, in the alternative, order a new trial as requested above.

Respectfully Submitted,

*s/David B. Goodman*
David B. Goodman (ARDC #6201242)
SHAW GUSSIS FISHMAN GLANTZ
  WOLFSON & TOWBIN LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654

and

Kevin L. Murch (Ohio Bar No. 0066833)
SCHOTTENSTEIN, ZOX
  & DUNN CO., L.P.A.
250 West Street
Columbus, Ohio 43215
*Attorneys for Tony Sekulovski*

# CERTIFICATE OF SERVICE

I, David B. Goodman, an attorney, certify that on October 23, 2009, I electronically filed, on behalf of Defendant/Counter-Plaintiff Tony Sekulovski, **DEFENDANT/COUNTER-PLAINTIFF TONY SEKULOVSKI'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR NEW TRIAL**, with the Clerk of Court using the CM/ECF system, which will send notification of such filings to all attorneys of record.

*s/David B. Goodman*
One of His Attorneys