**MARCUS & MILLICHAP REAL ESTATE
INVESTMENT SERVICES INC., and
MARCUS & MILLICHAP REAL ESTATE
INVESTMENT SERVICES OF CHICAGO,**

     **Plaintiffs,**

  **v.**

**TONY SEKULOVSKI,**

     **Defendant.**

**Case No. 07 C 5369**

**Hon. Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

Before the Court are various post-trial motions filed by the parties after the jury rendered a verdict in favor of Plaintiff Marcus & Millichap Real Estate Investment Services of Chicago, Inc. (hereinafter, "M&M"), on all of its claims and against Defendant Tony Sekulovski (hereinafter, "Sekulovski") on all of his counterclaims. The pending motions include Defendant Sekulovski's Motion for Judgment as a Matter of Law and Request for a New Trial and Plaintiff M&M's Motion to Alter Judgment for Prejudgment Interest. Also pending before the Court is M&M's Bill of Costs. For the reasons below, Sekulovski's motion is denied, M&M's motion is granted, and M&M is awarded a portion of its costs.

## I.  BACKGROUND

Plaintiff Marcus & Millichap ("M&M") is a real estate investment services corporation and Defendant Tony Sekulovski ("Sekulovski") worked as a sales agent on its behalf until he

terminated their relationship on June 15, 2007. Following the parties' separation, M&M brought multiple claims against Sekulovski for breach of contract, unjust enrichment, conversion, fraud, tortious interference with contractual relations, and tortious interference with existing business relations and prospective economic advantage. Sekulovski brought several counterclaims against M&M for breach of contract, unjust enrichment, and tortious interference with contractual relations.

On October 13, 2009, after a four-day trial, the jury returned a verdict in favor of M&M on all of its claims and awarded M&M $924,138.00 in total damages. The jury found against Sekulovski on all of his counterclaims. Specifically, the jury found that Sekulovski owed M&M: (1) $105,000.00 for misappropriating two real estate deals (Paxton Street Commons and Shoppes of Honey Creek) that commenced while he was still M&M's sales agent but closed after his separation, (2) $105,002.00 for misappropriating from escrow commissions on two deals (Arby's and Bradley Place) rightfully due to M&M, (3) $669,930.00 for fraudulently inducing M&M to overpay him commissions on 17 separate deals he worked on with fellow M&M sales agent Mark Luttner, and (4) $44,206.00 for failing to reimburse M&M for certain expenses it advanced on his behalf.

## II. SEKULOVSKI'S MOTION FOR JUDGMENT OR A NEW TRIAL

After the jury rendered its verdict, Sekulovski filed the instant motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure Rule 59. In support of his motion, Sekulovski challenges the sufficiency of the evidence presented by M&M at trial, certain of the Court's evidentiary rulings, and a portion of the damages award.

### A. Standard of Review

A party seeking to avoid a jury's verdict, either through a new trial or a judgment directed by the Court in its favor, faces a heavy burden. In ruling on a motion for judgment as a matter of law following a jury verdict, the Court does not reweigh evidence or make determinations about the credibility of witnesses. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Rather, considering the totality of the evidence, the Court determines whether the jury was presented with a "legally sufficient amount of evidence from which it could reasonably derive its verdict," in other words, whether any rational jury could have found for plaintiff. *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir., 2000); *see Harvey v. Office of Banks and Real Estate*, 377 F.3d 698 (7th Cir., 2004). In considering a Rule 50(b) motion for judgment as a matter of law, the Court views

the evidence and all reasonable inferences in the light most favorable to the prevailing party. *Reeves*, 530 U.S. at 150-51.

A party moving for a new trial pursuant to Rule 59(a) faces a similarly heavy burden and must show that the verdict is against the manifest weight of the evidence, the damages are excessive, or for some other reason the trial was not fair to the moving party. *Kapelanski v. Johnson*, 390 F.3d 525 (7th Cir., 2004). "New trials granted because the verdict is against the manifest weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks the conscience." *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir., 1995). If seeking a new trial based on newly discovered evidence, a party must show (1) the evidence was discovered after trial, (2) due diligence on the part of the movant to discover the new evidence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material, and (5) the evidence is such that a new trial would probably produce a new result. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999). It is against the backdrop that the Court evaluates Sekulovski's motion.

## B. Discussion

### 1. *The Jury's Verdict in Favor of M&M on its Fraud Claim*

Sekulovski seeks judgment in his favor or a new trial M&M's fraud claim. Specifically, Sekulovski argues that there was

insufficient evidence of a fraudulent scheme between Mark Luttner ("Luttner") and himself. Sekulovski further argues that a new trial is warranted because of certain newly discovered evidence and the Court's erroneous exclusion of other evidence. Finally, Sekulovski argues that the jury awarded M&M excessive damages on this claim.

### a. The Existence of a Fraudulent Scheme

In support of his argument that there was insufficient evidence of a fraudulent scheme between Luttner and himself, Sekulovski asserts that there was evidence at trial that M&M permitted sales agents to split commissions however they saw fit, so long as M&M approved. Further, Sekulovski argues, M&M approved the commission booking statements that it now claims are fraudulent.

Sekulovski's argument is a nonstarter because there was documentary and testimonial evidence presented at trial that the fee splits Sekulovski included in the booking statements were false because they did not accurately reflect the amount of work he and Luttner performed on the deals. Instead, Sekulovski skewed the fee splits in his favor so Sekulovski could collect at his higher commission percentage and then he and Luttner could split the inflated commission payment between themselves on the back end. Just because M&M relied on Sekulovski's statements in the commission booking statements and approved the commission splits

therein does not make Sekulovski's statements true or cure Sekulovski's underlying fraud.

### b. Luttner's E-mails

Sekulovski further argues that even if he is not entitled to judgment in his favor, the Court should order a new trial on M&M's fraud claim because that claim rested on the testimony of Mark Luttner and certain documents, some excluded by the Court and another recently created, undermine Luttner's credibility. Specifically, Sekulovski seeks a new trial at which he could introduce (1) a March 18, 2008 e-mail in which Luttner told Sekulovski that during Luttner's deposition testimony he had told M&M "what they wanted to hear," (2) an October 13, 2008, e-mail in which Luttner told Sekulovski that M&M was paying Luttner's legal bills in connection with his separate lawsuit against Sekulovski and that M&M had told Luttner it was going to drive Sekulovski to bankruptcy, and (3) an October 15, 2009, e-mail sent by Luttner to Sekulovski after the jury's verdict in which Luttner tells Sekulovski that M&M reneged on its promise to pay Luttner's legal bills and Luttner offers to help Sekulovski by "tell[ing] everyone the truth and that [he] lied" at his deposition.

The March 2008 e-mail plainly is hearsay because Sekulovski sought to introduce it to prove the matter asserted therein: that Luttner lied during his deposition. The October 2009 e-mail, the authenticity of which the parties dispute, is too little too late.

First, Sekulovski seeks to introduce the e-mail merely to impeach Luttner which is not grounds upon which newly discovered evidence may warrant a new trial. *See Jones*, 188 F.3d 709. Moreover, the e-mail is inadmissible because Luttner's statement therein that he lied at his deposition is hearsay and his statements about M&M reneging on paying his legal bills are irrelevant.

The October 2008 e-mail is a closer call. Luttner's statement in that document that M&M had told him it was going to drive Sekulovski to bankruptcy is hearsay because Sekulovski seeks to introduce that statement to show M&M's state of mind, not Luttner's. However, Sekulovski argues that Luttner's other statement, that M&M is paying his legal bills in a separate lawsuit, is not hearsay because Sekulovski sought to introduce it to show that Luttner is biased in favor of M&M and, therefore, was not truthful during his deposition.

Even if Luttner's statement does show he was biased, it is unlikely the statement would have had any effect on the jury's verdict and therefore a new trial is unwarranted. Luttner's credibility was at issue during the entire trial as his deposition testimony centered around his admission that he and Sekulovski had defrauded M&M. It is highly unlikely that any juror would have considered Luttner's truthfulness untarnished in the absence of the October 2008 e-mail. Moreover, there was substantial evidence of Sekulovski and Luttner's fraudulent scheme beyond Luttner's

testimony including Sekulovski's own e-mails. Accordingly, the jury's verdict in favor of M&M on its fraud claim stands.

### c.  Fraud Damages

The jury awarded M&M damages on all 17 transactions contained in its fraud claim in an amount equal to the amount of money it paid Sekulovski on these transactions minus the amount Sekulovski was actually due in commissions.  Sekulovski argues that he worked on these deals with Luttner so the amount M&M would have paid Luttner in commissions, absent the fraud, should also have been deducted from the damages award.  In support, Sekulovski points out that the proper measure of fraud damages is that amount which puts the injured party in the position it would have been had the fraud not occurred.

The evidence at trial showed that M&M receives commission payments from sellers after the close of a deal and then pays its agents their commissions individually according to the terms of M&M's Independent Contractor Policy Manual.  Indeed, this payment arrangement was the reason for Sekulovski and Luttner's fraudulent scheme in the first place.  The jury found that Sekulovski's fraud caused M&M to overpay commissions to Sekulovski and it awarded M&M the amount of that overpayment.  What M&M would have done with those funds after paying Sekulovski his rightful commission share is totally irrelevant.  Sekulovski does not get to keep the money he fraudulently stole merely because, absent the fraud, M&M would

have paid that money to someone else.  Sekulovski's argument is nonsensical and unjust and the Court rejects it.

### 2.   The Jury's Verdict in Favor of M&M on its Breach of Contract, Tortious Interference, and Conversion Claims

The jury found in favor of M&M on its breach of contract, tortious interference, and conversion claims.  These claims required M&M to prove that it had a contractual relationship with Sekulovski entitling it to commissions on transactions which commenced before Sekulovski terminated his relationship with M&M on June 15, 2007.  Sekulovski argues that the evidence presented at trial was insufficient to establish that such a contractual relationship existed and, therefore, the jury's verdict on these claims is erroneous.

There was sufficient evidence presented at trial to establish both that a contract existed between M&M and Sekulovski and what its terms were.  This evidence included a Salesperson Agreement executed by Sekulovski when he began working as a sales agent on behalf of M&M's Ohio location and which expressly incorporated the terms of M&M's Independent Contractor Policy Manual.  Neither Sekulovski nor M&M ever repudiated the Salesperson Agreement, even after Sekulovski left M&M's Ohio location and began working for M&M in Illinois.

Moreover, the parties always behaved as if bound by the terms of the Policy Manual.  At all times Sekulovski expected to be paid, and M&M paid him, commission percentages on a progressive basis as

set forth in the Policy Manual.  In fact, it was Sekulovski's expectation to be paid according to the terms of the Policy Manual that formed the basis of his fraudulent scheme with Luttner.  Given the parties' behavior the jury reasonably could have found that the parties had an implied contract that incorporated the Policy Manual's terms and the jury was instructed on principles of implied contract.

Thus, there was ample evidence presented at trial from which the jury could have concluded that Sekulovski and M&M had a contractual relationship, either express or implied, and that their contract incorporated the terms of the Policy Manual.  Accordingly, Sekulovski's challenges to the jury's verdict on M&M's breach of contract, tortious interference with contractual relations, and conversion claims fails.

On a final note, Sekulovski also seeks judgment in his favor or a new trial on his breach of contract counterclaim.  His counterclaim related to three deals - Linens 'N Things, Pizza Hut, and Streamwood Crossings - on which he claims M&M owed him commissions.  As M&M points out in its response brief, the problem with Sekulovski's position is that his counterclaim rested on his testimony that he had an oral contract with M&M which was separate and different from the contract that M&M propounded and which the jury found existed.  The jury rejected Sekulovski's testimony and found that the contract he described never existed.  Sekulovski

cannot now recover on his breach of contract counterclaim under M&M's contractual theory because he never made such an argument to the jury so he is entitled to neither judgment in his favor nor a new trial.

### 3. The Jury's Rejection of Sekulovski's Tortious Interference Counterclaim

The jury found against Sekulovski on his tortious interference with contractual relations counterclaim in connection with the Alameda transaction. Alameda was a New Mexico property that was sold by Doppco in 2008, after Sekulovski had terminated his relationship with M&M and while he was working as a sales agent in Arizona. Sekulovski claimed that M&M improperly interfered with his contractual right to his commission as sales agent on the Alameda deal when it contacted Doppco and ordered it to hold the Alameda commission in escrow pending resolution of this lawsuit.

In order to prevail on this counterclaim, Sekulovski was required to prove he had a contract with Doppco that entitled him to a commission on the Alameda deal. Fatal to his counterclaim was the complete lack of evidence at trial that Sekulovski had any contract with Doppco whatsoever. Sekulovski produced no executed representation agreement and there was no other evidence of such an agreement other than Sekulovski's own self-serving testimony, which the jury was free to reject.

### III.    MARCUS & MILLICHAP'S MOTION TO ALTER JUDGMENT

M&M seeks to alter the Court's judgment pursuant to Federal Rule of Civil Procedure 59(e) to include prejudgment interest on certain of its meritorious claims.  The parties agreed before trial that the Court would decide after the trial all issues of fact and law pertaining to either party's request for prejudgment interest. M&M supports its prejudgment interest calculations with an expert report which it submitted with its motion.  Sekulovski does not object to M&M's calculations but instead argues that none of the claims on which M&M seeks prejudgment interest fall within the provisions of Illinois Interest Act and, since the parties did not agree to any award of prejudgment interest, M&M is entitled to none.

### A.    Standard of Review

The Illinois Interest Act, which the parties agree governs M&M's request for prejudgment interest, permits the court to award prejudgment interest to a prevailing party in certain circumstances where the parties have not already agreed to any prejudgment interest award.  Specifically, the court may award interest at a rate of 5% per annum "on money lent or advanced for the use of another," "on money received to the use of another and retained without the owner's knowledge," and "on money withheld by an unreasonable and vexatious delay of payment."  815 ILCS 205/2.

The decision whether a claim warrants prejudgment interest lies within the discretion of the court. *See ITQ Lata, LLC v. MB Financial Bank, N.A.*, 317 F.Supp.2d 844 (N.DIll., 2004) (citing *Bank of Chicago v. Park Nat. Bank*, 660 N.E.2d 19 (Ill.App.Ct., 1995)). Factors the court should take into consideration in deciding whether to award prejudgment interest include whether the amount of damages is liquidated or easily ascertainable, *see Forrester v. State Bank of East Moline*, 363 N.E.2d 904, 910 (Ill.App.Ct., 1977), whether the non-prevailing party was acting in good faith, *see Trustmark Life Ins. Co. v. University of Chicago Hospitals*, 207 F.3d 876, 885 (7th Cir., 2000), as well as whether an award of prejudgment interest would serve some useful deterrent purpose or is necessary to adequately compensate the prevailing party, *see Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431 (7th Cir., 1989).

### B. Discussion

M&M seeks prejudgment interest on its successful claims for breach of contract, unjust enrichment, conversion, fraud, tortious interference with contractual relations, and tortious interference with prospective business relations. More specifically, M&M seeks prejudgment interest on its claims that: (1) Sekulovski failed to reimburse M&M for certain sales and legal expenses, (2) Sekulovski wrongfully misappropriated certain commission payments rightfully due to M&M, and (3) Sekulovski defrauded M&M by overstating the

amount of commissions M&M owed to him on the 17 Luttner deals. The Court will address each of M&M's claims in turn.

### 1. Sales Assistant and Legal Expenses

As part of his professional relationship with M&M, Sekulovski and M&M entered into contracts under which M&M would pay the salaries of three of Sekulovski's sales assistants and Sekulovski would reimburse M&M 50% of those payments. Sekulovski also participated in an M&M program under which Sekulovski was obligated to reimburse M&M for a portion of his legal expenses up to $25,000.00. The jury awarded M&M $44,206.00 on its claim that Sekulovski failed to reimburse M&M for these expenses.

M&M argues that these expenses were "money lent or advanced for the use of another" as that term is used in the Illinois Interest Act and therefore prejudgment interest is warranted. Sekulovski argues that this provision does not apply because M&M paid the money directly to third parties, not Sekulovski. Sekulovski's argument is unavailing. M&M advanced the money for Sekulovski's use, which is precisely the situation contemplated by the Illinois Interest Act. Moreover, the amount of damages on this claim was easily ascertainable and prejudgment interest is warranted to provide full compensation to M&M since it has been without the use of that money since it paid these expenses. Accordingly, M&M is entitled to $4,511.00 in prejudgment interest based upon the calculations contained within its expert report.

## 2. The Misappropriated Commissions and Stolen Deals

The jury awarded M&M $105,002.00 in damages based on Sekulovski wrongfully directing the commissions on the Arby's and Bradley Place deals to himself, and $105,000.00 in damages based on Sekulovksi wrongfully misappropriating the Paxton Street Commons and Shoppes of Honey Creek deals when he failed to disclose them to M&M while negotiating the terms of his separation. M&M argues that these commissions fall within the provisions of the Illinois Interest Act because they are "money received to the use of another and retained without the owner's knowledge" and because Sekulovski unreasonably and vexatiously delayed when M&M demanded repayment. Sekulovski tries to avoid prejudgment interest on these claims by insisting that he was acting in good faith when he diverted the commissions and did so only to ensure an accurate reconciliation of the commissions owed to him by M&M Chicago, and that he did not unreasonably delay payment merely because he chose to litigate.

While the good faith of Sekulovski is a factor to be taken into consideration, the court's inquiry does not end there. Again, the amount of these commissions was fixed and easily ascertainable, and during the period that Sekulovski had possession of these funds M&M did not so prejudgment interest is warranted to provide full compensation to M&M. Even if Sekulovski did not unreasonably delay repaying these commissions, they still constitute money received to the use of another without the owner's knowledge and therefore fall

within the provisions of the Illinois Interest Act. Accordingly, M&M is entitled to a total of $19,988.00 in prejudgment interest on these claims based upon the calculations contained within its expert report.

### 3. *The Fraudulent Scheme with Luttner*

Finally, M&M seeks prejudgment interest on its claim that Sekulovski defrauded M&M by overstating the amount of commissions M&M owed him on the 17 deals he worked on with Luttner. The jury awarded M&M $669,930.00 in damages on this claim. Again, M&M argues that the commission overpayments are "money received to the use of another and retained without the owner's knowledge" and that when it demanded that Sekulovski repay these commissions Sekulovski unreasonably and vexatiously delayed. Sekulovski argues that prejudgment interest on this claim is inappropriate because Illinois law does not provide for an award of prejudgment interest on tort claims and this claim sounds in fraud.

Often in a tort suit the amount of defendant's liability cannot be computed with the precision required for an award of prejudgment interest until judgment is entered. *See Needham v. White Laboratories, Inc.*, 847 F.2d 355, 361 (7th Cir., 1988). However, that is not always the case, and where tort damages are easily ascertainable, an award of prejudgment interest may be proper. *See Obermaier v. Obermaier*, 470 N.E.2d 1047 (Ill.App.Ct., 1984); *Forrester*, 363 N.E.2d at 910.

Here, the amount that M&M overpaid Sekulovski was fixed and easily ascertainable. Moreover, prejudgment interest is proper on this claim to provide M&M with full compensation since Sekulovski has had possession of these funds, and M&M has not, since the overpayments were made. Prejudgment interest also is warranted because the jury found that Sekulovski's behavior was fraudulent and such behavior must be deterred. For these reasons, M&M is entitled to $68,370.00 in prejudgment interest on this claim based upon the calculations contained within its expert report.

## IV.  MARCUS & MILLICHAP'S BILL OF COSTS

After the trial M&M submitted a Bill of Costs seeking reimbursement from Sekulovski in the amount of $55,207.00 for certain expenses relating to this case. Sekulovski only challenges a portion of M&M's expenses so the Court will focus on those challenges.

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs – other than attorney's fees - should be allowed to the prevailing party." FED. R. CIV. P. 54(d). Recoverable costs, as set forth in 28 U.S.C. § 1920, include: (1) fees of the clerk, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court-appointed experts and interpreters.

There is a strong presumption favoring the award of costs to the prevailing party. *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 945 (7th Cir., 1997). Nonetheless, district courts possess wide discretion in determining whether expenses claimed by the prevailing party are actually taxable as costs. *Deimer v. Cincinnati Sub-Zero Products, Inc.*, 58 F.3d 341, 345 (7th Cir., 1995). This Court must review a prevailing party's bill of costs in scrupulous detail. As the Supreme Court has explained, Rule 54(d) does not give a court "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur. . . . [I]tems proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964), overruled on other grounds by *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987). Thus, M&M is entitled to recover costs only if (1) the expenses are allowable under § 1920, and (2) the expenses are reasonable, both in amount and necessity to the litigation. *Deimer*, 58 F.3d at 345.

### A. Fees for Service of Summons and Subpoena

M&M is requesting that Sekulovski pay its costs associated with serving a summons upon Sekulovski and subpoenas upon various third-party witnesses. Sekulovski only objects to two items among these costs: the $400 cost of formally serving Sekulovski with the complaint and the $50 cost of serving a subpoena upon Luttner. Sekulovski argues that neither of these expenses was necessary

because he would have waived formal process pursuant to Federal Rule of Civil Procedure 4(d) and Luttner was cooperating with M&M. These arguments are meritless. Rule 4(d) does not require M&M to first serve Sekulovski informally or inquire whether he would agree to service in such a manner. Furthermore, at the time Luttner was subpoenaed he was no longer an M&M employee and there was no guarantee he would cooperate with M&M. Thus, the $450 in costs that M&M incurred in connection with Sekulovski's summons and Luttner's subpoena are properly taxable to Sekulovski as the losing party.

## B. Transcript and Court Reporter Fees

Sekulovski objects to $33,333.60 of the $42,406.11 that M&M seeks in transcript and court reporter fees. The Court examines each of Sekulovski's objections in turn.

**Daily Trial Transcripts.** M&M obtained daily transcripts of the trial at a total cost of $31,828.00. M&M claims that it obtained daily transcripts "to streamline this complex case . . . by referencing the transcripts to determine what evidence was already in the record," to prepare for and defend against motions for judgment as a matter of law that Sekulovski made during and after the trial, to prepare its witness examinations and cross-examinations and ensure that cross-examinations and closing argument conformed to the testimony. M&M also notes that the trial

was expected to last nine days and Sekulovski had listed nine potential trial witnesses.

In this district, charges for daily or hourly transcripts may be awarded where the trial is long, the issues complex, or a transcript is needed to cross-examine a witness or respond to an opposing party's motions. *See Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir., 2000); *Vigortone Ag Products, Inc. v. PM Ag Products, Inc.*, No. 99-7049, 2004 WL 1899882, at *5 (N.D.Ill., Aug. 12, 2004). The court may not tax the cost of transcripts provided merely for the convenience of the requesting attorney, but a transcript need not be "absolutely indispensable" to provide the basis for an award of costs. *Majeske*, 218 F.3d at 825 (citations omitted).

This was a relatively complex case that involved a large amount of testimony and documentary evidence. Therefore, it was reasonable for M&M to request daily transcripts so that it could be certain what evidence had been put in the record on a daily basis, to prepare its closing argument, and to respond to various motions made by Sekulovski during the trial. The cost of M&M's daily transcripts will be taxed to Sekulovski.

**Transcripts of Court Hearings**. M&M seeks reimbursement of $65.45 it spent obtaining transcripts of two separate court hearings during which the court ruled on discovery motions. Sekulovski claims that these transcripts were unnecessary. The

cost of obtaining transcripts of court proceedings, other than the trial, for use in the case are taxable where those transcripts are reasonably necessary. *See Majeske*, 218 F.3d at 825. M&M claims that these transcripts contained oral rulings of the court on contentious discovery matters so they were necessary to ensure that the court's rulings were observed and to avoid unnecessary motion practice. Given this explanation the court is satisfied that these transcripts were necessary and their cost will be taxed to Sekulovski.

**Video Recording of Sekulovski's Deposition.** Sekulovski challenges M&M's decision to order a video recording of his deposition, which cost $830.00, since he is a party to the case and necessarily would appear at trial to testify. The prevailing party generally may recover the cost of videotaping a deposition, *see Little v. Mitsubishi Motors North America, Inc.*, 514 F.3d 699, 702 (7th Cir., 2008), unless the witness is a party to the action, *Fairley v. Andrews*, No. 03-5207, 2008 WL 961592, at *11 (N.D.Ill., 2008). Since Sekulovski is the defendant he could be expected to appear at trial and the videotape of his deposition was unnecessary. Accordingly, this cost is excluded from those M&M may recover.

**Depositions of Harris and Salisbury.** Sekulovski also objects to M&M recouping its costs for the depositions of Kirk Salisbury ("Salisbury") and Geoffrey Harris ("Harris") which Sekulovski

maintains were unnecessary. With respect to depositions, the determination of reasonableness revolves around whether the deposition was reasonably necessary at the time the deposition was taken in light of the facts known at the time and without regard to later developments that render the deposition unneeded for further use. *See Majeske*, 218 F.3d at 825; *Mother and Father v. Cassidy*, 338 F.3d 704, 712 (7th Cir., 2003). Furthermore, the introduction of a deposition at trial is not a prerequisite for finding that it was necessary to take the deposition. *See M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir., 1991).

M&M has shown that the testimony of Salisbury, who was Sekulovski's accountant, was essential to the issue of whether Sekulovski considered himself to be an independent contractor. In fact, portions of Salisbury's deposition testimony were read to the jury at trial. Accordingly, Salisbury's deposition was reasonably necessary and M&M is entitled to recover $886.09 in costs related to it.

Sekulovski argues that Harris's deposition was unnecessary because he is an M&M employee and he did not testify to anything that was in dispute. M&M has shown that at the time it deposed Harris it had a claim against Sekulovski relating to referral fees Sekulovski had received from Harris. It was reasonable for M&M to consider Harris's deposition necessary even if it was not used at trial. Sekulovski's argument that Harris's deposition was

unnecessary because, as an employee, he was available to M&M at any time is an argument the Seventh Circuit has characterized as "ludicrous." *See Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 455 (7th Cir., 1998). M&M is entitled to recover $135.05 in costs related to Harris's deposition.

### C. Witness Fees

Sekulovski objects to $4,300.97 of the $5,079.89 in witness fees that M&M seeks in its bill of costs.

**Corporate Officers Kerin and Haddigan**. M&M included $1,881.09 in costs relating to the trial testimony of John Kerin ("Kerin") and Bernard Haddigan ("Haddigan"), both of whom are M&M corporate officers. Sekulovski maintains that these costs are not properly taxable because Kerin and Haddigan were the party representatives of M&M Chicago and M&M REIS, respectively, and not "witnesses."

28 U.S.C. § 1821, which addresses witness fees, does not define the term "witness" and, in interpreting Section 1821, courts have held that parties are not entitled to witness fees for their own appearance in court. *WH Smith Hotel Services, Inc. v. Wendy's Intern., Inc.*, 25 F.3d 422, 429 (7th Cir., 1994). However, equally consistently, courts have held that costs may be assessed for corporate officers and directors who testify on behalf of the corporation but are not personally involved in the litigation. *Id.* Sekulovski does not contend that Kerin or Haddigan were personally involved in the litigation, nor does Sekulovski challenge the

amount of their claimed costs. Accordingly, $1,881.09 in witness fees relating to Kerin's and Haddigan's trial testimony is taxable.

**Martin Louie.** Sekulovski objects to $1,585.88 of the $2,150.36 M&M seeks in costs relating to its expert witness, Martin Louie ("Louie"). Sekulovski maintains that these costs are inflated because Louie, who lives in California, lodged two nights for both his deposition and the trial, both of which occurred in Chicago. Unless an expert is court-appointed, fees relating to an expert witness's attendance at court or a deposition are only recoverable at the rate established for a lay witness, currently $40.00 per day, plus travel expenses and subsistence. *See* 28 U.S.C. § 1920(3); 28 U.S.C. § 1821; *see also Portman v. Andrews*, 249 F.R.D. 279, 282 (N.D.Ill., 2007).

These are precisely the costs M&M has submitted. With respect to Louie's deposition, M&M has submitted $933.40 in travel expenses (airfare, taxi, hotel) and $89.30 in subsistence expenses (meals). With respect to the trial, M&M has submitted $1,045.40 in travel expenses and $83.36 in subsistence expenses. M&M's decision to have Louie lodge two nights on each occasion is not unreasonable given the distance and time difference between Chicago and California. Accordingly, M&M's costs in connection with Louis are taxable.

**Jonathan Lee.** Sekulovski challenges $834.00 in travel costs relating to Jonathan Lee's ("Lee") deposition which occurred in

Chicago. According to Sekulovski, M&M declined his offer to hold Lee's deposition in Florida where Lee resides. M&M did not respond to Sekulovski's challenge. Since Sekulovski offered to hold the deposition near Lee's residence, these expenses were unnecessary and the Court excludes them.

### D. Duplication Fees

Finally, Sekulovski challenges $1,310.80 of the $6,167.55 in duplication costs that M&M seeks on the grounds that the color copy costs incurred by M&M are excessive. M&M's counsel prepared three color copies of its own deposition designations and two copies of Sekulovski's counter designations, for a total of 2,260 pages, and charged M&M $1.07 per page. Sekulovski contends that a local retailer would charge only $.49 per page for color copies so M&M's duplication costs should be reduced by the difference in price which is $1,310.80.

Here, the color copies were required so the court could identify the parties' deposition designations and there is no requirement that counsel survey local retailers every time it has a large photocopying job. Moreover, the $1.07 per page color copy rate charged by M&M's counsel is not unreasonable. *See Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06-950, 2007 WL 1149220, at *10 (N.D.Ill., Apr. 17, 2007) (taxing costs for 500 color copies at $1.41 per page). Accordingly, $1,310.80 in color copying costs properly is taxed to Sekulovski.

# V.   CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.   Defendant Sekulovski's Motion for Judgment or for a New Trial is DENIED;

2.   Marcus & Millichap's Motion to Alter Judgment is GRANTED;

3.   Marcus & Millichap's Petition for Costs is GRANTED IN PART.  Defendant Tony Sekulovski is hereby ordered to pay the sum of $92,869.00 in prejudgment interest to Marcus & Millichap and to reimburse Marcus & Millichap for costs in the amount of $53,543.13.


**IT IS SO ORDERED.**


_____
        Harry D. Leinenweber, Judge
        United States District Court


**DATE:** January 12, 2010